UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BENJAMIN R. SMITH,

              Plaintiff,

-vs-                                        Case No.  5:04-cv-684-Oc-10GRJ

CITRUS COUNTY, FLORIDA, a political
subdivision, KEN FRINK, in his individual
capacity, LARRY BROCK, in his individual
capacity,

              Defendants.

_____

## **O R D E R**

This is an action pursuant to 42 U.S.C. § 1983 for violation of the Plaintiff's rights under the First Amendment. The case is before the Court on the Defendants' motions to dismiss (Docs. 9 & 11) the Plaintiff's amended complaint (Doc. 8) or alternatively for a more definite statement. The Plaintiff has not responded to the motions to dismiss, and the time for doing so has elapsed. For the reasons that follow, the Plaintiff's prayer for punitive damages against Citrus County is due to be stricken and the Plaintiff's claims against the individual Defendants are due to be dismissed with leave to amend.

### **Background and Facts**

This action arises out of the employment of the Plaintiff, Benjamin Smith, with Defendant Citrus County, Florida. The Plaintiff began his employment with the County in 1987 and, in 1988, the Plaintiff became section chief of traffic control. The Plaintiff remained at that position until his termination in September of 2003. The traffic control

section was a part of the division of road and maintenance, which was itself part of Citrus

County's public works department. At all relevant times, Defendant Larry Brock was the

director of the road and maintenance division; Defendant Ken Frink was the director of the

public works department; Richard Wesch, who is not a defendant, was the county

administrator and policymaking official overseeing the human resources offices of various

county departments, including the department of public works; and Kenneth Saunders, also

not a defendant, was the assistant county administrator.

The Plaintiff alleges that he was discharged in September of 2003 in retaliation for

speaking out on matters of public concern, "including but not limited to violations of laws,

rules, or regulations; improper or wasteful government spending; matters of public safety

and other conduct which is of concern to the public."[1] The Plaintiff lists four instances of

alleged protected speech, which occurred at various times over twelve years of his

employment:

> (1) in the fall of 1991, the Plaintiff "reported and exposed egregious mismanagement" when road maintenance employees "were misused for an assignment at a time when four stop signs were down";
>
> (2) in 1995, the Plaintiff told Ken Saunders that Defendant Brock had "sexual affairs" with County employees while married;
>
> (3) in 2001 and 2002, the Plaintiff opposed a violation of Chapter 316, Florida statutes, when the County was installing street signs on private roads without seeking proper reimbursement; and

---

[1] Doc. 8, at ¶ 9.

> (4) in September of 2003, the month the Plaintiff was terminated, the Plaintiff "spoke out against mismanagement regarding a mishandled 911 call" and commented on a press report about a County commissioner.[2]

The Plaintiff alleges in September of 2003 he was falsely accused of referring to a County commissioner as a "dago Yankee bitch" and was fired.

The Plaintiff's amended complaint contains one count: a § 1983 action for retaliation in violation of the First Amendment. The Plaintiff alleges that he was "terminated from employment through the actions of Defendant in violation of the First Amendment and section 1983 of which a reasonable person would have known" and that "Defendant County's policymaking officials were well aware of Plaintiff's free speech and upheld the discharge recommendation on a pretext for retaliation."[3] The Plaintiff seeks back-pay, compensatory damages, punitive damages, attorney fees, and an injunction prohibiting the Defendants from engaging in any practice that violates the First Amendment.

Citrus County moves for dismissal, or alternatively for a more definite statement, on the basis that the Plaintiff has failed to allege an unconstitutional policy or custom for which it may be held liable. The County also moves to dismiss the claim for punitive damages. The individual Defendants, Frink and Brock, move for dismissal on the ground that the Plaintiff has failed to alleged a First Amendment violation with appropriate specificity and

---

[2] Doc. 8, at ¶¶ 9 & 10.

[3] Id. at ¶¶ 13 & 14.

on the basis of qualified immunity. The Plaintiff, who is represented by counsel, has not responded.[4]

## Motion to Dismiss Standard

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from the facts in the light most favorable to the plaintiff.[5] In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[6] As the Supreme Court declared in Conley v. Gibson, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[7] Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it

---

[4] The Defendants made virtually identical arguments in their motions to dismiss the original complaint (Docs. 3 & 5). The Plaintiff did not timely respond to these motions either; however, before the Court could rule, the Plaintiff filed an amended complaint (Doc. 8). The only material difference between the original complaint and the amended complaint is that the amended complaint lists the four instances of speech described above and also alleges that (1) in 1995, the Plaintiff received an evaluation stating that he was "too opinionated", (2) in 1996, Defendant Brock attempted to "dig up dirt to fire Plaintiff", and (3) in 1997, Brock tried to discipline the Plaintiff "for violating rules which did not exist." Doc. 8, at ¶ 9.

[5] See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[6] Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

[7] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

asks for the proper relief," it is sufficiently plead.[8] However, to survive a motion to dismiss,

a plaintiff must do more than merely "label" his claims.[9] "[C]onclusory allegations,

unwarranted factual deductions or legal conclusions masquerading as facts will not prevent

dismissal [for failure to state a claim]."[10]

## Discussion

### A. County Liability under § 1983

The Supreme Court in Monell v. Department of Social Services held that a local

governmental entity, such as a county, may not be sued under § 1983 for injuries inflicted

solely by its employees or agents.[11] Thus, there is no respondeat superior liability under

§ 1983.[12] Instead, a county may be held liable under § 1983 only "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury. . . ."[13] There are

generally three ways in which the Plaintiff may establish the County's liability. First, the

Plaintiff may show that the County adopted an express written policy statement to retaliate

against employees for exercising their first amendment rights. Second, the Plaintiff may

---

[8] Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

[9] Blumel v. Mylander, 919 F. Supp. 423, 425 (M.D. Fla. 1996).

[10] Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003); Day v. Taylor, - - F.3d - - , 2005 WL 407410, at *4 (11th Cir. Feb. 22, 2005).

[11] Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

[12] Id. at 690-92.

[13] Id. at 694.

show that the unconstitutional retaliatory actions of "final policymakers" can be attributed

to the County. Third, the Plaintiff may show that there existed in the county government a

widespread practice "so permanent and well settled as to constitute a 'custom or usage'

with the force of law."[14]

The County contends that it is unclear from the amended complaint precisely which

theory of governmental liability the Plaintiff intends to proceed under. However, the Court

finds that the amended complaint is fairly clear in this regard. The Plaintiff does not allege

that the County has promulgated a written policy of retaliating against its employees for

exercising first amendment rights. Nor, does the amended complaint claim that a

widespread pattern or practice of unconstitutional retaliation existed in the county

government. Instead, it is clear that the Plaintiff's case for governmental liability is

predicated on allegations that a final policymaker for the County violated the Plaintiff's first

amendment rights by terminating the Plaintiff for his protected speech.[15] Indeed, the County

recognizes as much in its motion, but argues that the Plaintiff's allegations in this respect

are deficient because the Plaintiff has not specifically identified the final policymaker who

made the termination decision or how that decision was reached.

The amended complaint contains allegations that Richard Wesch, the county

administrator, was a policymaker who controlled the County's human resource office and

---

[14] City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quotation omitted).

[15] Doc. 8, at ¶¶ 13 & 14.

answered directly to the Citrus County Board of County Commissioners.[16] Whether Mr. Wesch was in fact the final policymaker, as opposed to merely a decisionmaker, such that his actions may give rise to County liability does not need to be resolved at the pleading stage.[17] Furthermore, the information that the County believes is lacking in the amended complaint should be readily discoverable in the County's own employment records. In short, the County has presented no basis for dismissing the Plaintiff's claims against it.

However, the Plaintiff's prayer for punitive damages against the County must be stricken. A local governmental entity such as Citrus County is immune from punitive damages under § 1983.[18]

## B. Individual Capacity Liability under § 1983

The individual Defendants, Frink and Brock, advance two arguments for dismissing the Plaintiff's claims against them. First, they argue that the Plaintiff has failed to satisfy the heightened pleading requirements in stating a § 1983 claim against individual defendants. Second, they argue that they are entitled to qualified immunity. These two arguments are

---

[16] Id. at ¶ 5.

[17] Local governmental liability "may arise with regards to an employment decision, such as a termination, provided that the decisionmaker 'possesses *final authority* to establish *municipal policy* with respect to the action ordered.'" Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (quoting Pembaur v. City of Cincinnati, 475 U.S. 649, 481 (1986)). However, "the mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official polices and are not subject to review." Mandel v. Doe, 888 F.2d 783, 792 (11th Cir. 1989). Local government liability will not lie "for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).

[18] See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Colvin v. McDougall, 62 F.3d 1316, 1319 (11th Cir. 1995).

actually one and the same. This is because the first inquiry in determining whether a governmental actor is entitled to qualified immunity requires the Court to determine whether the factual allegations in the complaint, if true, present a constitutional violation.[19] In making this determination, the Court is to keep in mind the heightened pleading requirements in civil rights cases against individual defendants.[20] If the allegations in the amended complaint are not sufficient to state that the individual Defendants have violated the Plaintiff's constitutional rights, then the Defendants would be entitled to qualified immunity.[21]

To satisfy the heightened pleading requirements, the Plaintiff must allege the relevant facts "with some specificity."[22] "Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."[23] "[M]ore than mere conclusory notice pleading is required. . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."[24] With this heightened pleading requirement in mind, the Court

[19] Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

[20] Id. at 1235.

[21] Id. at 1235-36 (holding that individual defendants in a *Bivens*-type claim were entitled to qualified immunity because the plaintiff failed to plead a constitutional violation with the requisite specificity).

[22] GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998).

[23] Id.

[24] Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

will consider whether the Plaintiff has alleged that the individual Defendants have violated his first amendment rights.[25]

To state a claim for a first amendment violation, the Plaintiff must allege that he engaged in speech on a matter of public concern and that his speech played a "substantial part" in the decision to terminate his employment.[26] Further, determining whether a violation of the First Amendment has occurred requires the Court to consider whether the Plaintiff's interest in speaking outweighs the government's interest in efficient public service.[27] Thus, under the heightened pleading requirements the Plaintiff must sufficiently plead the manner, time, place, and context of the speech so that the Court may properly weigh the competing interests and determine the availability of qualified immunity.[28] Moreover, the amended complaint alleges that Frink and Brock had a supervisory role over the Plaintiff. Therefore, to hold these individual Defendants liable under § 1983, the Plaintiff must allege that they either actually participated in the alleged constitutional violation or that a causal connection exists linking their supervisory actions to the violation.[29]

---

[25] The Court notes that the heightened pleading requirement does not apply to claims against a local governmental entity. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993); Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-37 (11th Cir. 2004).

[26] Anderson v. Burke County, Ga., 239 F.3d 1216, 1219 (11th Cir. 2001).

[27] Id.

[28] In weighing the competing interests, the Court must consider: "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made." Stanley v. City of Dalton, 219 F.3d 1280, 1289 (11th Cir. 2000).

[29] Lewis v. Smith, 855 F.2d 736, 737 (11th Cir. 1988).

The Court finds the amended complaint lacking in each of these material pleading requirements. Whether Defendant Brock had "sexual affairs" with county employees is not a matter of public concern. Allegations that the Plaintiff exposed the misuse of road maintenance employees and other unspecified "waste of public funds" are entirely too vague for the Court to determine whether the speech was protected. Moreover, the alleged exposure of the misuse of road maintenance employees occurred in the Fall of 1991 and is therefore too remote in time to be causally connected to his termination over twelve years later. Allegations that the Plaintiff "spoke out against mismanagement regarding a mishandled 911 call" and "comment[ed] on press reports concerning public perception of the commissioner" also lack sufficient specificity as to the manner, time, place, and context of his speech. As such, these allegations are insufficient to meet the heightened pleading requirements. Indeed, the only allegation that comes close to being specific enough and not too remote in time is the Plaintiff's allegation that in 2001 and 2002, he "opposed a violation of Chapter 316, Florida statutes, when the County was installing street signs on private roads without seeking proper reimbursement." However, even here the Plaintiff does not allege that he actually voiced his opposition and, if he did, when, how, and in what context he did so.

Finally, and importantly, the amended complaint is entirely devoid of any allegations that either Defendant Frink or Defendant Brock participated in any way in the decision to terminate the Plaintiff. In fact, there are no specific allegations relating to Defendant Frink other than to say he was the director of the public works department. As such, the

amended complaint does not allege a basis for imposing liability on the individual Defendants.

The defense of qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation."[30] The purpose of qualified immunity is to strike a balance "between the need for a damages remedy to protect the rights of citizens and the need for government to be able to carry out their discretionary functions without the fear of constant baseless litigation."[31] "Because of the purposes served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or motion for summary judgment stage of the litigation."[32] The policy behind the doctrine is "obviously thwarted if the plaintiff's complaint provides an inadequate factual basis upon which to decide a motion to dismiss."[33] Dismissal is appropriate where a plaintiff has failed to sufficiently allege a constitutional violation.[34] However, the Court concludes that dismissal in this case should be with leave to amend.

---

[30] Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

[31] GJR Inv., Inc., 132 F.3d at 1366.

[32] Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002).

[33] Marx v. Gumbinner, 855 F.2d 783, 792 (11th Cir. 1988) *abrogated on other grounds by* Burns v. Reed, 500 U.S. 478 (1991).

[34] Gonzalez, 325 F.3d at 1235-36.

## Conclusion

Accordingly, upon due consideration, it is adjudged that:

(1) Defendant Citrus County's motion to dismiss (Doc. 9) is GRANTED in part and DENIED in part, and the Plaintiff's prayer for punitive damages against Citrus County is STRICKEN;

(2) Defendant Frink and Defendant Brock's motion to dismiss (Doc. 11) is GRANTED, and the Plaintiff's claims against these Defendants are DISMISSED with leave to amend;

(3) the Plaintiff is directed to file within ten (10) days from the date of the filing of this order his second amended complaint correcting the pleading deficiencies described above;

(4) the Defendants' motions (Docs. 3 & 5) to dismiss the original complaint are terminated as moot.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 26th day of April, 2005.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy